[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is an administrative appeal from a decision of a Hearing Officer of the Rhode Island Department of Human Services (hereinafter "DHS"). Douglas L. Taylor (hereinafter "Plaintiff") seeks reversal of the July 30, 2003 decision denying him Medical Assistance (hereinafter "MA") benefits. Jurisdiction is pursuant to G.L. 1956 § 42-35-15. The record is remanded to DHS to make further findings of fact.
 FACTS AND TRAVEL
Plaintiff is a 53 year old man whose employment for the last 30 years involved carpentry and construction work. He has undergone treatment for coronary artery disease and sciatica since at least 2001. He applied for MA benefits on February 27, 2003, and that application was denied on May 16, 2003. Plaintiff requested a hearing on May 20, 2003, and the resulting hearing took place on June 18, 2003, before a Hearing Officer of DHS.
Present at the hearing were Plaintiff and his attorney, as well as a representative of the Medical Assistance Review Team (hereinafter "MART"). The representative reviewed the findings of the MART, which had determined that Plaintiff was capable of performing at least light work. Plaintiff testified regarding his symptoms relative to both his sciatica and his coronary artery disease and the concomitant reduction in his abilities. Additionally, an updated evaluation of Plaintiff's condition, as assessed by his treating physician according to the guidelines of an MA-63 form, was submitted to the MART for their review and recommendation to the Hearing Officer. The MA-63 that had been submitted earlier was from Dr. Vohr, and was completed in February, 2003. The MA-63 submitted at the hearing was from Dr. Gilson, a cardiologist, and had been completed in June, 2003. Both doctors noted moderate limitations on Plaintiff's activities. On July 30, 2003, the Hearing Officer issued the decision of the DHS to deny MA benefits to Plaintiff, who timely filed the instant appeal.
 STANDARD OF REVIEW
The standard for judicial review of contested cases under the Administrative Procedures Act is delineated in G.L. 1956 §42-35-15(g), which states:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The review by the Superior Court is confined to the record of the administrative proceeding. Environmental Scientific Corp. v.Durfee, 621 A.2d 200, 204 (R.I. 1993).
Moreover, "the Superior Court may not, on questions of fact, substitute its judgment for that of the agency whose action is under review." (Barrington School Committee v. Rhode IslandState Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). The Court's role is limited to examining the record to determine if there is any competent evidence to support the agency's decision. "If there is sufficient competent evidence in the record, the court must uphold the agency's decision." (JohnstonAmbulatory Surgical Associates v. Nolan, 755 A.2d 799, 805 (R.I. 2000)) (citing Barrington School Committee, 608 A.2d at 1138).
With respect to Social Security proceedings, the federal court has noted that "[b]ecause Social Security proceedings are not adversarial in nature, the secretary ha[s] a duty `to develop an adequate record from which a reasonable conclusion can be drawn.'" Heggarty v. Secretary of Health and Human Services,947 F.2d 990, 997 (1st Cir. 1991) (citing Currier v.Secretary of Health, Education and Welfare, 612 F.2d 594, 598 (1st Cir. 1980) (quoting Carillo Marin v. Secretary ofHealth and Human Services, 758 F.2d 14, 17 (1st Cir. 1985) (per curiam)). When record findings are not developed sufficiently, the Superior Court has the authority to remand a case "to correct deficiencies in the record and thus afford the litigants a meaningful review." Lemoine v. Dept. of MentalHealth, Retardation Hosps., 113 R.I. 285, 290, 320 A.2d 611, 614 (1974). See also Cullen v. Town of Lincoln, No. 01-212, slip op. at 5 (R.I., filed April 12, 2004). It must be noted that:
 "[t]his deferential standard of review applies only to findings of fact, however, and `no similar presumption of validity attaches to the Secretary's conclusions of law, including the determination of proper standards to be applied in reviewing claims.' Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal. Id." McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).
 MEDICAL ASSISTANCE REVIEW PROCESS
The Rhode Island Department of Human Services is an Executive agency established to administer publicly funded social assistance programs. G.L. 1956 § 42-12-1 et seq. While funded by both the state and the federal governments, in order to receive funding from federal sources, DHS is required to promulgate and follow guidelines that have been established and approved by the federal government. G.L. § 42-12-4,42 U.S.C. § 1396 et seq. Pursuant to these guidelines, DHS utilizes the same definition of disability as the federal Social Security Act:
 "For the purposes of eligibility, an individual is disabled if s/he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than twelve (12) months. . . ." 42 U.S.C. § 1382c(a)(3).
In order to establish such disability, the DHS must adhere to a five step inquiry, delineated by the U.S. Secretary of Health and Human Services in 20 C.F.R. § 416.920.
The first step is to determine if the applicant is currently involved in substantial gainful activity. If the answer to that question is yes, then the applicant is not disabled. If the answer is negative, then the inquiry proceeds. The second determination to be made is whether the applicant has a severe "impairment or combination of impairments which significantly limits [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The severity is determined by reviewing all of the medical evidence, including evaluations, symptoms and test results; age, education, and work experience do not yet come into play at this step. The burden of proof is on the applicant. If it is determined that the applicant does not have a severe impairment, then MA benefits are denied. If the impairment(s) is/are severe, the inquiry moves on to step 3.
This step considers the severity of the impairment in the context of certain defined impairments that have been compiled in appendix 1 to subpart P of 20 C.F.R. § 404. If the applicant's impairment conforms to one or more of the categories listed, and is of sufficient duration, then the applicant is found to be disabled. If the applicant's impairment(s) are not so neatly categorized, then an additional assessment must be made before moving on to step 4.
Residual functional capacity (RFC) is determined by assessing all of the medical and other evidence in the case file to evaluate the most work an applicant can do in light of his or her impairment(s). Before a determination of "not disabled" may be made, DHS is "responsible for developing [the applicant's] complete medical history" and will consider medical reports, either formal or informal, observations of "neighbors, friends or other persons," as well as the applicant's own description of symptoms, including pain, that contribute to the applicant's overall functioning. 20 C.F.R. § 416-945. The RFC is measured in terms of "sedentary," "light," and "medium." Pertinent to this case are the definitions of sedentary and light work. Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. Part 404 Subpart P, Appendix 2. A claimant who is capable of performing sedentary work should be able to sit for a total of six (6) hours in an eight (8) hour work day, and to endure up to two (2) hours total of standing or walking. Id.; See also 20 C.F.R. § 416.967(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."20 C.F.R. § 416.967(b). A claimant who is found capable of light work should be able to stand or walk, off and on, for a total of about six hours out of eight; the ability to lift up to twenty pounds for onethird of the workday; and the ability to lift up to ten pounds up to two thirds of an eight hour work day. Social Security Ruling 83-10 (interpreting § 416.946(b)). "Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping." Id. at 14.
Moving on to step 4, an applicant's RFC in light of the individual's past relevant work, is considered. If the applicant is still able to do the past relevant work, then a finding of "not disabled" is made, and the inquiry ends. However, if an assessment is not dispositive, then at the fifth step, an applicant's age, work experience, and education are considered. The burden shifts to DHS at this final stage of the inquiry "to show that the claimant could perform some other work that exists in `significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Almonte v. Rhode IslandDepartment of Human Services, 2002 R.I. Super. Lexis 118, 17 (citing 20 C.F.R. § 404.1560(b)(3)). If the RFC, taken in conjunction with these additional vocational factors, indicates that an applicant could make an adjustment to other work, then the applicant is deemed not disabled. According to DHS regulations,
 "[i]n order to support a finding that [an individual is] not disabled at this fifth step of the sequential evaluation process, we (DHS) are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the applicant] can do, given [his/her] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c)(2) (2004).
If the applicant is considered unable to make such an adjustment, the applicant will be found disabled. The likelihood that such an adjustment can be made successfully diminishes proportionately with age, and increases proportionately according to the level of education achieved by the applicant.
This fifth step is aided by a series of medical-vocational charts provided at 20 C.F.R. Subpart P, 1 (2003), commonly called "the grid." These charts are to be used only as long as the findings of fact coincide with the corresponding criterion of a rule, and the individual is found to be capable of performing a wide variety of jobs at the designated level. The grid is essentially a guide which must be considered in the greater context of an applicant's overall impairment. See Kirk et. al.v. Secretary of Health and Human Services, SSR No. 83-47c (C.E. 1983), 1983 SSR Lexis 29. If the findings depart from these qualifications, then the DHS, in considering all other relevant facts in making its decision, may resort to seeking guidance from a vocational expert.
 THE AGENCY DECISION
The MART Findings
The Hearing Officer, after consideration of all of the evidence, presented a decision which began by following the five step roadmap. However, when the Hearing Officer reached step two, she departed from the findings of the MART[1] when she declared that "medical evidence does not demonstrate that the appellant has a severe impairment that would preclude her [sic] from working either part-time or full-time." Decision at 3.
Subsequent to that statement, the Hearing Officer reviewed the Plaintiff's medical record and self-assessment. The Plaintiff had volunteered that he was capable of independently performing household tasks and ambulating without the aid of any devices. He is also able to drive and do his own shopping. Plaintiff further volunteered that he has three college degrees.
As to the medical information, the Hearing Officer found that the Plaintiff "was taking Vicodin for the sciatic pain and was doing well with that medication." Decision at 4. The Hearing Officer further found that Plaintiff was able to exercise to 89% of his peak heart rate at his stress echocardiogram on February 19, 2003, and that there was no ischemia or evidence of a myocardial infarction. The Plaintiff had responded well to the two stent placements, though he still had poor dietary habits and was smoking two packs of cigarettes a day, according to the medical records.
There is no assessment by the Hearing Officer of how Plaintiff's medical condition compares to the impairments listed in appendix 1 to subpart P of 20 C.F.R. § 404, as required by step 3 of the disability analysis. Further, there is no comment offered by the Hearing Officer on a RFC determination per se, which would need to be completed prior to moving on to step 4. Her conclusion, however, in which she states the age and medical history of Plaintiff, may have been the RFC analysis, albeit unidentified as such. The Hearing Officer then concludes her review, determining that "there is no evidence of a severe impairment that would preclude the appellant from working either part-time or full-time." Decision at 4. Neither Step 4 nor step 5 is specifically referenced in the Hearing Officer's decision, though for reasons cited later in this decision, this Court finds that the Hearing Officer clearly proceeded at least through step 4.
The Step 2 Inquiry
On appeal, Plaintiff argues that DHS used an incorrect standard by which to judge severity at step 2 of the inquiry. Plaintiff maintains that the proper standard requires considering impairments in combination, and is a "de minimis device to screen out frivolous claims or slight abnormalities which could never be disabling." Plaintiff's Brief at 5, citing Bowen v. Yuckert,482 U.S. 137, 153 (1987). In response, DHS claims that by her "complete analysis of the medical records submitted," the Hearing Officer applied the correct legal standard for step 2 of the evaluation process. Further, DHS cites Bowen as well, to support the DHS proposition that "if the Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied." Reply at 13, citing Id. at 140.
It is well established that a threshold inquiry at this step is the 12-month durational requirement. See 20 C.F.R. § 416.909. While the Hearing Officer did not address this requirement, it may be implied that she found that it was satisfied since the Hearing Officer proceeded directly to the severity issue. The meaning of "severe" in step 2 of this process has been extensively discussed in a plethora of cases, federal regulations, and law review articles. The C.F.R. explains: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). The regulation goes on to define basic work activities as those "abilities and aptitudes necessary to do most jobs" e.g., "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." Id. This severity standard "must be determined by the `totality of medical signs, symptoms and lab findings, and the effects of the impairment(s), including any related symptoms, on the individual's ability to function." David v. Rhode IslandDepartment of Human Services, 2001 Super. Lexis 4, quoting 64 Fed. Reg. 83, 23382 (1999). Additionally, the Hearing Officer must consider "claimant's credibility, persistent attempts to find relief, willingness to try any treatment prescribed, regular contact with physicians, daily activities, medication, and psychological disorders." Porter v. Commissioner of SocialSecurity, 895 F. Supp. 1427, 1436 (D.KS 1995) (citing Luna v.Bowen, 834 F.2d 161, 165-166 (10th Cir. 1987)).
The Hearing Officer's finding that Plaintiff had not met his burden of proof at this step when the record shows that MART found that Plaintiff did, in fact, have severe impairments at this stage of the inquiry is not supported by the reliable, probative, and substantial evidence of record. As Mr. Amaral stated at the hearing, "Is the impairment severe? Yes. The Review Team determined that your illness or injury is severe." Tr. at 3. Compare that statement to the Hearing Officer's decision at 3, which states: "Step two involves examining the evidence to determine if the impairment is severe. The medical evidence does not demonstrate that the appellant has a severe impairment that would preclude her (sic) from working either part-time or full-time." The Hearing Officer fails to explain her reasons for making this step 2 finding. Further, in the five step sequential evaluation, a finding of not severe at step 2 ends the inquiry, yet the Hearing Officer apparently proceeds to discuss Applicant's age, education and work experience, which should not enter the inquiry until after step 3.
While deference upon review of administrative decisions is required, it is incumbent on an administrative hearing officer to detail clearly her findings of fact and conclusions of law. This "is especially important when evidentiary conflicts abound. It is only by making basic findings of fact that a reviewing court is able to determine how such conflicts were resolved. `[I]f a tribunal fails to disclose the basic findings upon which its ultimate findings are premised, we will neither search the record for supporting evidence nor will we decide for ourselves what is proper in the circumstances.'" Cullen v. Town of Lincoln, No. 01-212, slip op. at 6 (R.I., filed April 12, 2004) (quotingHooper v. Goldstein, 104 R.I. 32, 44, 241 A.2d 809, 815 (1968)). The confusion surrounding this stage of the inquiry gives rise to evidentiary conflicts which are not reconcilable on the state of the record.
The Medical Reports
Plaintiff's next arguments address the Hearing Officer's assessments of the attending physicians' reports and the Plaintiff's testimony regarding his pain and other symptoms. In short, Plaintiff argues that the Hearing Officer failed to assign the proper weight to the physicians' assessments of the Plaintiff's abilities and functional limitations, and by so doing, the Hearing Officer impermissibly made her own medical determinations. Moreover, Plaintiff asserts that the Hearing Officer disregarded the Plaintiff's testimony regarding his pain and symptoms.
DHS responds that the Hearing Officer "made specific findings relating to each impairment based upon the medical records." Reply at 12. Further, DHS notes that the Hearing Officer related "that there had been no recurrent cardiac symptoms" and that "Plaintiff was taking Vicodin for the sciatic pain and was doing well with the medication." Id. Finally, DHS asserts that the Hearing Officer made findings "as to credibility of witnesses, weighted the evidence and applied the necessary standards for determining disability." DHS Reply at 14.
A review of the record indicates that the Hearing Officer did consider much of the medical evidence; however, in her decision, she fails to cite several facts that may be considered to weigh against a finding of "not disabled." Applicant testified that continued use of Vicodin for his sciatic pain resulted in constipation; thus, the sciatic pain was no longer controlled by medication. Transcript at 8-9. The Hearing Officer did not inquire as to Applicant's testimony regarding "constant hand and leg cramps." Id. at 8. Contrary to DHS's assertions, the Court can find no indication in the record that the Hearing Officer, in fact, made findings of credibility in her decision.
The Hearing Officer failed to discuss the MA-63's from Drs. Vohr and Gibson in which they both indicated that Applicant was exertionally limited.[2] When a Hearing Officer fails to consider or rejects a treating physician's opinion, the Hearing Officer must provide specific reasons for doing so on the record.20 C.F.R. § 416.927(d)(2) (2004) (providing that the agency "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"). Failure to provide such reasons renders the decision arbitrary and capricious.
Furthermore, the record reflects that the Hearing Officer did not discuss Step 3 of the evaluation process which compares an applicant's impairments to lists of impairments in 20 C.F.R. Part 404, Subpart P, App. 1 to determine if there is a match. Additionally, while not citing to the pertinent step in the inquiry, the Hearing Officer moved on to mention Plaintiff's age, education and vocation, which should only be taken into consideration upon consideration of steps 4 and 5. Upon finding that Plaintiff is capable of performing sedentary or light work according to "the grid," 20 C.F.R. Part 404, Subpart P, Appendix 2, it must be inferred that the Hearing Officer found Applicant unable to participate in his past relevant work in light of his RFC. Thus, it was incumbent on the Hearing Officer, in reaching step 5 of the inquiry, to show that the Plaintiff has transferable skills, enabling him to perform a job that is available in the national economy. The Federal Regulations maintain that:
 "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." Notice of Social Security Ruling, 61 FR 34474 (July 2, 1996).
The Hearing Officer, while stating that the Plaintiff was capable of performing light and/or sedentary duties, did not explore the Plaintiff's training, e.g., his three college degrees, to determine what job skills are transferable to other "work that exists in significant numbers in the national economy."20 C.F.R. § 416.960(c)(2)(2004). The importance of supplying the requisite information has been interpreted as an error of law:
 "The Hearing Officer's failure to make specific findings indicating how appellant . . . has transferable skills allowing direct entry into sedentary work constituted error of law at step five of the sequential evaluation. There is simply a dearth of evidence in the record to support a finding of transferable skills." Almonte v. Rhode Island Department of Human Services, 2002 R.I. Super. Lexis 118 at 20 (2002) (citing Dikeman v. Halter, 245 F.3d 1182, 1185 (10th Cir. 2001)) (internal citations omitted).
This Court notes that when a record is lacking in sufficient findings, a remand to correct the deficiency is in order. SeeCullen v. Town of Lincoln, No. 01-212, slip op. (R.I. filed April 12, 2004).
 Conclusion
After a review of the entire record, including medical assessments by Plaintiff's treating physicians, findings of the MART, and the testimony of Plaintiff at the administrative hearing, this Court finds the decision of the Hearing Officer to be unsupported by reliable, probative and substantial evidence. The Hearing Officer fails to explain why her finding at step 2 of the disability process differed from that of the MART, and on what she based that decision. Further, the Hearing Officer neglected to explain on the record why she did not consider the treating physicians' assessments of their patient's condition. Substantial rights of Plaintiff have been prejudiced. Accordingly, the decision of DHS is remanded to DHS for a determination of findings of fact and application of the facts to the relevant regulations herein specified and pursuant to G.L. §42-35-12. This Court shall retain jurisdiction.
Counsel will prepare an appropriate order for entry.
[1] A review of the MART findings reveals that Mr. Amaral, the representative of the MART, who attended the hearing, first established that Appellant was unemployed, thus not engaged in substantial gainful activity. After completing Step 1 of the inquiry, Mr. Amaral succinctly stated the team's findings with regards to step 2 of the requisite 5 step inquiry:
 "Is the impairment severe? Yes. The Review Team determined that your illness or injury is severe. The information reviewed included an MA-63 form, AP-70 form, Rhode Island Hospital records, Dr. Vohr's records, records from Dr. Gilson. Mr. Taylor has coronary artery disease. He had — uh — (inaudible) stress echo done December 26th, 2002 and subsequently had a cardiac (inaudible) done. He had — previously had a stent placed in May, 2001 and underwent a second one in December, 2002. His LV enjection (sic) fraction was 60 percent. The undated MA-63 indicated that he did have some physical restrictions. The letter from Dr. Gilson dated January 28, 2003, indicated he was doing well post-operatively. His blood pressure was good. His heart — uh — rate stable. Uh — heart sound normal and he had experienced no cardiac symptoms since his surgery. He has however — um — oh — he — he was however still smoking. His complaints of sciatic pain — uh — were managed with medication and PT.
With respect to the remaining steps of the inquiry, Mr. Amaral noted:
 Does the impairment meet or equal the Social Security listing? No, it does not meet or equal the Social Security listings. [step 3] You do have functional restrictions. And the Team next completed a residual function capacity assessment — uh — based on the medical records. The Team determined that you are capable of performing at least light work — ah — taking into account your age, education and past relevant work. Uh — Med. Voc Rule 201.15.1 That's how the Team made the decision1." Hearing transcript at 3.
[2] A review of both treating physicians' MA-63 evaluations indicated that the most exertion appropriate for applicant according to Dr. Vohr would be: walking-1 hr., standing-1 hr., sitting-3 hrs., no reaching, no bending, and may lift up to 10 lbs for less than 1 hr./day. Additionally, the treating physician wrote that applicant could stand and sit intermittently for no more than 1-2 hours with breaks, and must do no strenuous activity. According to Dr. Gilson, applicant was capable of less than 1 hour of walking, an hour each of standing, sitting and reaching, no bending, carrying up to 5 lbs. for an hour, and lift up to 10 lbs. for an hour. Each of these assessments is based on applicant's functional limitations in an 8 hour workday.